## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

―――――――――――――――――――――――

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | § | |
| the States of ARKANSAS, COLORADO, | § | |
| ILLINOIS, INDIANA, LOUISIANA, | § | |
| NEW MEXICO, OKLAHOMA, | § | |
| TENNESSEE, and TEXAS | § | |
| *ex rel.* MICHAEL CARTER, | § | |
| | § | |
| Relator, | § | Case No. 3:19-CV-1238-M |
| | § | |
| v. | § | |
| | § | |
| EMERGENCY STAFFING SOLUTIONS, INC. | § | |
| and | § | |
| HOSPITAL CARE CONSULTANTS, INC., | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS EMERGENCY STAFFING SOLUTIONS, INC.'S AND HOSPITAL CARE CONSULTANTS, INC.'S MOTION TO DISMISS COMPLAINT AND SUPPORTING BRIEF

Jeffrey J. Ansley
Arianna G. Goodman
Tamara Droubi (admitted *pro hac vice*)
Jason B. Sobelman (admitted *pro hac vice*)
**VEDDER PRICE P.C.**
100 Crescent Court, Suite 350
Dallas, Texas 75201

**ATTORNEYS FOR DEFENDANTS EMERGENCY STAFFING SOLUTIONS, INC. AND HOSPITAL CARE CONSULTANTS, INC.**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD........................................................................................... 3

III.  ARGUMENT ....................................................................................................... 4

    A.    Counts 1-5 Must be Dismissed Because They Alleged Facts That are
        Insufficient to Establish Violations of the False Claims Act ............................... 4

        1.    Count 1 Fails to Allege Facts Sufficient to Establish the Required
                Predicate Violation of the Anti-Kickback Statute ................................... 4

                a.    Relator Fails to Allege Scienter Under AKS and the FCA............ 6

                b.    Relator Fails to Allege an Illegal Scheme Under AKS.................. 8

                c.    Relator Fails to Allege an Illegal Scheme Under the FCA .......... 11

        2.    Count 2 Must be Dismissed Because Relator Fails to Allege Facts
                Sufficient to State a Claim for an FCA Violation Predicated on
                Stark ....................................................................................................... 14

        3.    Count 3 Must be Dismissed Because it Fails to Allege Facts
                Sufficient to State a Claim for Violation of the FCA Under 31
                U.S.C. § 3729(a)(1)(B) ......................................................................... 17

        4.    Count 4 Must be Dismissed Because it Fails to Allege Facts
                Sufficient to State a Claim for Violation of the FCA Under 31
                U.S.C. § 3729(a)(1)(G) ......................................................................... 18

        5.    Count 5 Must be Dismissed Because it Fails to Allege Facts
                Sufficient to State a Claim for Violation of the FCA Under 31
                U.S.C. § 3729(a)(1)(C) ......................................................................... 19

    B.    Counts 6-15 Fail for Multiple Reasons............................................................ 21

        1.    Relator Lacks Standing Under Counts 7 and 13 .................................... 21

        2.    Relator Fails to State a Claim Under Counts 6-9 and 11-15................... 21

        3.    Relator Fails to State a Claim Under Count 10....................................... 24

    C.    The Court Should Dismiss the Complaint with Prejudice .................................. 25

IV.   CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).........................................................................................*passim*

*U.S. ex rel. Bain v. Ga. Gulf Corp.,*
    386 F.3d 648 (5th Cir. 2004) .........................................................................18

*U.S. ex rel. Beck v. St. Joseph Health Sys.,*
    No. 5:17-CV-052-C, 2021 WL 7084164 (N.D. Tex. Nov. 30, 2021) ....................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................3, 4, 11

*U.S. ex rel. Besancon v. Uchicago Argonne, LLC,*
    No. 12-C-7309, 2014 WL 4783-56 (N.D. Ill. Sept. 24, 2014)............................................19

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
    447 F.3d 411 (5th Cir. 2006) ..........................................................................7

*U.S. ex rel. Capshaw v. White,*
    No. 3:12-CV-4457-N, 2018 WL 6068806 (N.D. Tex. Nov. 20, 2018) ....................................7

*City of Chi. v. Purdue Pharm. L.P.,*
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) .................................................................24

*U.S. ex rel. Colquitt v. Abbott Labs.,*
    858 F.3d 365 (5th Cir. 2017) ....................................................................4, 12, 24

*U.S. ex rel. Doe v. Dow Chem. Co.,*
    343 F.3d 325 (5th Cir. 2003) ..........................................................................4

*U.S. ex rel. Drakeford v. Tuomey,*
    792 F.3d 364 (4th Cir. 2015) ......................................................................6, 14

*U.S. ex rel. Farmer v. City of Houston,*
    523 F.3d 333 (5th Cir. 2008) .........................................................................20

*Gonzalez v. Fresenius Med. Care N. Am.,*
    689 F.3d 470 (5th Cir. 2012) ..........................................................................5

*U.S. ex rel. Greenfield v. Medco Health Sols., Inc.,*
    880 F.3d 89 (3d Cir. 2018)............................................................................5

## TABLE OF AUTHORITIES
(continued)

Page

*Gregory v. Houston Indep. Sch. Dist.*,
No. CV H-14-2768, 2016 WL 5661701 (S.D. Tex. Sept. 30, 2016) .......................................12

*U.S. ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ......................................................................................4, 12, 19

*U.S. ex rel. Haight v. RRSA (Com. Div.), LLC*,
No. 3:16-CV-1975-S, 2020 WL 6163139 (N.D. Tex. Oct. 20, 2020) ......................6, 7, 12, 19

*Hanlester Network v. Shalala*,
51 F.3d 1390 (9th Cir. 1995) ........................................................................................8

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
634 F.3d 787 (5th Cir. 2011) ......................................................................................11

*Health Choice Alliance, LLC, on behalf of U.S. v. Eli Lilly & Co., Inc.*,
No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986 (E.D. Tex. July 25, 2018) ................22, 24

*Health Choice Grp., LLC v. Bayer Corp.*,
No. 5:17-CV-126-RWS-CMC, 2018 WL 3637381 (E.D. Tex. June 29, 2018) ..........20, 22, 24

*U.S. ex rel. Hebert v. Dizney*,
295 F. App'x 717 (5th Cir. 2008) ...............................................................................12

*Hendrickson v. Bank of Am., N.A.*,
343 F. Supp. 3d 610 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019)....................8

*U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
816 F. App'x 892 (5th Cir.), *cert. denied*, 141 S. Ct. 905 (2020)............................................11

*U.S. ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*,
No. SA-17-CV-1249-XR, 2019 WL 5970283 (W.D. Tex. Nov. 13, 2019) ...........................19

*Jebaco, Inc. v. Harrah's Operating Co., Inc.*,
587 F.3d 314 (5th Cir. 2009) ......................................................................................11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ........................................................................................3

*U.S. ex rel. Longhi v. Lithium Power Tech. Inc.*,
575 F.3d 458 (5th Cir. 2009) ......................................................................................12

*U.S. ex rel. Patel v. Catholic Health Initiatives*,
312 F. Supp. 3d 584 (S.D. Tex. 2018), *aff'd sub nom. U.S. ex rel. Patel v.
Cath. Health Initiatives*, 792 F. App'x 296 (5th Cir. 2019) ......................................................8

# TABLE OF AUTHORITIES
(continued)

Page

*U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
  794 F.3d 457 (5th Cir. 2015), *aff'd sub nom. State Farm Fire & Cas. Co. v.
  U.S. ex rel. Rigsby*, 580 U.S. 39 (2016) ...............................................................................17

*U.S. ex rel. Ruscher v. Omnicare, Inc.*,
  663 F. App'x 368 (5th Cir. 2016) .........................................................................................8

*Schiller v. Physicians Res. Grp. Inc.*,
  342 F.3d 563 (5th Cir. 2003) ...............................................................................................25

*U.S. ex rel. Sibley v. A Plus Physicians Billing Serv. Inc.*,
  No. 13 C 7733, 2015 WL 8780548 (N.D. Ill. Dec. 15, 2015) .............................................24

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) .................................................................................................9

*U.S. ex rel. Spicer v. Westbrook*,
  751 F.3d 354 (5th Cir. 2014) ...............................................................................................17

*Sullivan v. Leor Energy, LLC*,
  600 F.3d 542 (5th Cir. 2010) ...............................................................................................22

*U.S. v. Abundant Life Therapeutic Servs. Texas, LLC*,
  No. CV H-18-773, 2019 WL 1930274 (S.D. Tex. Apr. 30, 2019) ..........................................8

*U.S. v. Davis*,
  132 F.3d 1092 (5th Cir. 1998) ................................................................................................8

*U.S. v. Marlin Med. Sols. LLC*,
  No. SA-21-CV-00160-OLG, 2022 WL 190308 (W.D. Tex. Jan. 12, 2022) ..........................20

*U.S. v. McClatchey*,
  217 F.3d 823 (10th Cir. 2000) ................................................................................................8

*U.S. v. Ricard*,
  922 F.3d 639 (5th Cir. 2019) ..................................................................................................6

*U.S. v. St. Junius*,
  739 F.3d 193 (5th Cir. 2013) ..................................................................................................6

*U.S. v. Team Fin., L.L.C.*,
  No. 2:16-CV-00432-JRG, 2019 WL 3943958 (E.D. Tex. Aug. 21, 2019) ............................14

*U.S. v. Vista Hospice Care, Inc.*,
  No. 3:07-CV-00604-M, 2016 WL 3449833 (N.D. Tex. June 20, 2016) ..................................5

## TABLE OF AUTHORITIES
(continued)

Page

*Universal Health Servs, Inc. v. U.S. ex rel. Escobar*,
   579 U.S. 176 (2016) ..................................................................................18, 23

*Williams v. WMX Tech., Inc.*,
   112 F.3d 175 (5th Cir. 1997) .......................................................................4, 12

*U.S. ex rel. Wismer v. Branch Banking and Trust Co.*,
   No. 3:12-cv-1894, 2013 WL 5989312 (N.D. Tex. Nov. 12, 2013) .......................13

**Rules**

FED. R. CIV. P. 8 ...............................................................................................3

FED. R. CIV. P. 8(a) .....................................................................................3, 4, 9

FED. R. CIV. P. 9(b) ................................................................................... *passim*

FED. R. CIV. P. 12(b)(6) ...................................................................................3, 9

FED. R. CIV. P. 15(a) ........................................................................................25

**Statutes**

31 U.S.C. § 3729(a)(1)(G) .................................................................................18

31 U.S.C. § 3729(b)(4) .....................................................................................18

42 U.S.C. § 1320a-7b(a) .....................................................................................6

42 U.S.C. § 1320a-7b(b) .....................................................................................1

42 U.S.C. § 1320a-7b(b)(1)-(2) ...........................................................................5

42 U.S.C. § 1320a-7b(h) .....................................................................................6

42 U.S.C. § 1395nn .............................................................................................1

42 U.S.C. § 1395nn(a)(1)(A) ..............................................................................15

42 U.S.C. § 1395nn(a)(2) ...................................................................................15

3729 U.S.C. § 3729(a)(1)(A) ....................................................................... *passim*

3729 U.S.C. § 3729(a)(1)(B) ..........................................................................1, 17

3729 U.S.C. § 3729(a)(1)(C) ......................................................................1, 19, 20

## TABLE OF AUTHORITIES
(continued)

Page

3729 U.S.C. § 3729(a)(1)(D)-(G) ........................................................................1, 20

ARK. CODE ANN. §§ 20-77-901 – 911 ...............................................................21, 22

Colo. Rev. Stat. Ann. § 25.5-4-305 .............................................................................22

Colorado Medicaid False Claims Act ("CMFCA") ....................................................21

Ill. Comp. Stat. Ann. 175/3 .........................................................................................22

Ill. Comp. Stat. § 5/46-1 ..............................................................................................24

Ill. Comp. Stat. § 92-5(b) .............................................................................................24

Illinois False Claims Act ("IFCA") .............................................................................21

Illinois Insurance Claims Fraud Prevention Act ("IICFPA") ......................................24

Ind. Code § 5-11-5.7-2 .................................................................................................22

Indiana Medicaid False Claims and Whistleblower Protection Act ............................21

La. Stat. Ann. § 46:438.3 .............................................................................................22

La. Stat. Ann. § 46:438.3(G) ........................................................................................24

Louisiana Medical Assistance Programs Integrity Law ("LMAPIL") ...................21, 24

N.M. Stat. Ann. § 27-14-4 ............................................................................................22

N.M. Stat. Ann. §§ 27-14-7(B), (E)(2) ........................................................................21

New Mexico Medicaid False Claims Act ("NMMFCA") ...........................................21

Okla. Stat. Ann. Tit. 63 § 5053.1(B) ...........................................................................22

Oklahoma False Claims Act ("OFCA") .......................................................................21

State Medicaid Fraud False Claims Act ("ASMFFCA") .............................................21

Tenn. Code. Ann. § 71-5-182 ......................................................................................22

Tennessee Medicaid False Claims Act ("TMFCA") ....................................................21

Tex. Hum. Res. Code Ann. § 36.002 ...........................................................................22

## TABLE OF AUTHORITIES
(continued)

**Page**

Texas Medicaid Fraud Prevention Act ("TMFPA") ....................................................................21

**Other Authorities**

42 C.F.R. § 411.351 ...............................................................................................................15, 16

Defendants Emergency Staffing Solutions, Inc. ("ESS") and Hospital Care Consultants, Inc. ("HCC") (collectively, "Defendants") respectfully move the Court to dismiss the *qui tam* Complaint filed by Michael Carter ("Carter") pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a), 9(b), and 12(b)(6).

## I.     INTRODUCTION

Defendants file this motion to dismiss following separate decisions by the United States Department of Justice and the nine states of Texas, Arkansas, Colorado, Illinois, Indiana, Louisiana, New Mexico, Oklahoma, and Tennessee not to intervene in this case. ECF No. 24.

Carter asserts False Claims Act ("FCA") liability against Defendants based on the alleged: (i) presentment of false claims under 3729 U.S.C. § 3729(a)(1)(A), predicated on alleged violations of the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b) (Count 1), and Stark Law ("Stark"), 42 U.S.C. § 1395nn (Count 2); (ii) making of false records or statements for the purpose of getting a false or fraudulent claim paid by the government under 3729 U.S.C. § 3729(a)(1)(B) (Count 3); (iii) submission of reverse false claims under 3729 U.S.C. § 3729(a)(1)(G) (Count 4); and (iv) conspiracy to get false claims paid in violation of 3729 U.S.C. § 3729(a)(1)(C) (Count 5). Carter also asserts a myriad of fraud violations pertaining to various states (Counts 6-15). Because none of these claims are pled with plausibility, particularity, or state cognizable claims, Defendants move the Court to dismiss the Complaint in its entirety.

At all relevant times, Defendants provided emergency department ("Emergency") and hospitalist staffing services in predominantly rural areas to client hospitals across various states. *See* Compl. ¶ 12. They routinely contracted with hospitals to provide the assistance of Emergency physicians and hospitalists, as well as a combination of Emergency and hospitalist services, referred to in the industry as the "hybrid" model. *See id.* at ¶¶ 5, 6, 12, 91, 116. The hybrid model is common in rural areas that are plagued by a limited supply of doctors, and thus, have difficulty

staffing their health care facilities. *Id.* at ¶ 94. By supporting the economic viability of such hospitals, Defendants' use of the hybrid model reduces the need to transport patients to larger cities, thereby reducing patient transport costs and helping the community overall.[1]

Defendants paid their physicians hourly rates commiserate with fair market value in the areas in which they practiced. *Id.* at ¶¶ 5, 95. The agreements with hospitalists and hybrid physicians were consistently designed by legal counsel to comply with applicable laws and regulations, including AKS and Stark, and structured to account for additional work they may be required to perform in fulfilling their contractual responsibilities. *Id.* at ¶¶ 85, 88-90. They, for example, could be required to admit patients into facilities, recommend their admission, conduct rounds, order their transfer or discharge, or any combination thereof. *Id.* When required, each of these extra responsibilities added procedural and administrative steps to the physicians' respective workloads, including corresponding paperwork. *Id.* In other words, in the instances when the physicians were required to perform additional work in order to fulfill their responsibilities as contracted physicians, the agreements between Defendants and these physicians provided for their fair market compensation for this additional work. *Id.* at ¶¶ 96, 101. This compensation did not correlate to patient acuity or the type of insurance or payer involved – meaning that physician compensation was not connected to or otherwise related to profitability. *Id.*

As described below, the practices followed under this model – by Defendants, the numerous hospitals involved, and the countless physicians contracted with by both Defendants and the relevant hospitals – at all times were consistent with the requirements of AKS, Stark, FCA, and all applicable state laws and regulations. Accordingly, Defendants' conduct, as already found by the United States Department of Justice and the nine states that declined to intervene in this

---

[1] This model is not unique to Defendants. It was used throughout the industry at all relevant times.

case, did not violate those laws. Defendants therefore respectfully request that the Court dismiss the Complaint in its entirety and do so without leave to amend and with prejudice.

## II.    LEGAL STANDARD

FRCP Rule 12(b)(6) empowers the Court to dismiss a complaint for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

"The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Instead, "[t]he ultimate question…is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

Under FRCP Rule 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has described what Rule 8(a) requires from a well-pled complaint:

> [T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Citation]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. "[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" [Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." [Rule] 8(a)(2).

*Iqbal*, 556 U.S. at 678-79 (citations omitted). A complaint that fails "to nudge" a claim "across the line from conceivable to plausible" must be dismissed as implausible. *Twombly*, 550 U.S. at 570.

Where a plaintiff alleges fraud, FRCP Rule 9(b) further buttresses Rule 8(a), requiring that the complaint further state "with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *Iqbal*, 556 U.S. at 678 (citation omitted). While noting that "Rule 9(b)'s ultimate meaning is context specific," the Fifth Circuit applies the strict pleading requirements of Rule 9(b) "with 'bite' and without 'apology.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). At a minimum, a plaintiff must describe the "'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017) (citation omitted); *see also Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent").

The strict particularity required under Rule 9(b) is intended to ensure the complaint "'provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs*, 565 F.3d at 190 (citation omitted). The Court treats a Rule 9(b) failure as a dismissal for failure to state a claim. *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003) (citation omitted).

## III. ARGUMENT

### A. Counts 1-5 Must be Dismissed Because They Alleged Facts That are Insufficient to Establish Violations of the False Claims Act.

#### 1. Count 1 Fails to Allege Facts Sufficient to Establish the Required Predicate Violation of the Anti-Kickback Statute.

Carter asserts under Count 1 that Defendants are liable under 31 U.S.C. § 3729(a)(1)(A) because they "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for

payment or approval." *See* Compl. ¶¶ 137-38. A claim is legally false when the claimant lies about its compliance with a statutory or regulatory requirement. *U.S. ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 100 (3d Cir. 2018) (citation omitted). To state a "presentment claim" under § 3729(a)(1)(A), a relator must plead: (1) a fraudulent course of conduct: (2) made or carried out with knowledge; (3) that was material; and (4) caused the federal government to pay out money. *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012) (citation omitted).

Here, Carter alleges Defendants violated AKS by paying kickbacks to physicians who provided Emergency and/or hospitalist services at Defendants' client hospitals in order to induce them to refer patients for inpatient care. *See, e.g.*, Compl. ¶ 3. In turn, Carter asserts Defendants violated the FCA by submitting, and causing their client hospitals to submit, claims for Medicare payment that were tainted by the alleged kickbacks. *See id.* at ¶ 7. As described below, the factual mooring for each of these allegations is fatally deficient, and therefore this claim must fall.

Where AKS serves as the predicate for an alleged FCA violation, the relator must meet the pleading requirements of both statutes. *See U.S. v. Vista Hospice Care, Inc.*, No. 3:07-CV-00604-M, 2016 WL 3449833, at *24 (N.D. Tex. June 20, 2016) (citation omitted). Thus, in addition to setting forth a presentment claim (*i.e.*, the knowing submission of a false claim), a relator must also plead a cognizable AKS violation. To successfully plead an AKS violation, the complaint must allege the defendant: (1) knowingly and willfully; (2) solicited or received, or offered or paid remuneration; (3) in return for, or to induce, a referral in connection with a federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(1)-(2). The submission to the government of a claim for "items or services resulting from a violation of [AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." *Id.* at § 1320a-7b(g).

At the pleading stage, a relator must support alleged violations of AKS and the FCA with

*plausible* allegations and *particular* facts. Here, because the Complaint fails on both fronts, the Court must dismiss Count 1.

>           a.           **Relator Fails to Allege Scienter Under AKS and the FCA.**

Carter fails to plead that Defendants acted with requisite intent under AKS and the FCA. Specifically, AKS requires that a kickback be offered or paid "knowingly and willfully." 42 U.S.C. § 1320a-7b(a). Actual knowledge of or a specific intent to violate AKS is not required. *U.S. v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013) (citing 42 U.S.C. § 1320a-7b(h)). Rather, willfulness under AKS "means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." *U.S. v. Ricard*, 922 F.3d 639, 648 (5th Cir. 2019) (citation and quotation marks omitted). Under the FCA, defendant must act "knowingly" in order to be liable under an FCA presentment claim. 31 U.S.C. at § 3729(a)(1)(A). That is, defendant must have actual knowledge of the false information at issue, or act in deliberate ignorance or reckless disregard of the truth or falsity of the information. *Id.* at § 3729(b)(1).[2] Although allegations of scienter may be "averred generally," "simple allegations of fraudulent intent will not suffice," *i.e.*, a relator must set forth *specific facts* supporting an inference of fraud. *U.S. ex rel. Haight v. RRSA (Com. Div.), LLC*, No. 3:16-CV-1975-S, 2020 WL 6163139, at *6 (N.D. Tex. Oct. 20, 2020) (citations omitted) (emphasis added). As can be seen in the Complaint, Carter fails to allege with any particularity, or plausibility, the scienter required by either AKS or the FCA.

Providing mere formulaic repetitions, the Complaint is entirely bereft of any factual allegations regarding Defendants' states of mind under AKS and the FCA. In the 135 paragraphs

---

[2] The purpose of this knowingly requirement is to avoid punishing "honest mistakes or incorrect claims submitted through mere negligence." *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 380 (4th Cir. 2015) (citation omitted).

(and 40+ pages) leading up to Count 1, there are but **two** references about intent (aside from the applicable law section), both relating to ESS. In the first, Carter merely echoes the FCA: "ESS has knowingly submitted and caused the submission of false claims . . . ." Compl. ¶ 8. In the second, Carter concludes: "These claims [by ESS] . . . are false because they are submitted in knowing violation of [Stark and AKS]."[3] *Id.* at ¶ 127. Other than these recitations, the Complaint is devoid of **any** particularity about Defendants' scienter.

The Complaint also fails on the basis of group pleading. "The Fifth Circuit and this district have clearly spelled out Rule 9(b)'s group pleading requirements. Parties cannot merely 'lump all defendants together.' [Citation]. There has to be some work that 'segregate[s] the alleged wrongdoing of one from another.' [Citations]." *U.S. ex rel. Capshaw v. White*, No. 3:12-CV-4457-N, 2018 WL 6068806, at *4 (N.D. Tex. Nov. 20, 2018) (alteration in original). Yet, group pleading is precisely what Carter utilizes to ascribe scienter to Defendants. As noted, the only two references regarding scienter in the Complaint relate to ESS. *See generally* Compl. Carter appears to excuse this detail by collectively identifying ESS and HCC as "ESS" based on his conclusion (as set forth in the section describing the parties) that HCC is an "alter-ego" of ESS. *Id.* at ¶¶ 2, 6, 13. Under Rule 9(b), Carter's failure to link the requisite scienter under AKS and the FCA to each of the Defendants is fatal [4] – much like his failure to plead scienter regarding any individuals.[5]

In keeping with Carter's failure to allege, plausibly and particularly, that Defendants (1)

---

[3] Notably, Stark does not require a "knowing" state of mind. *See* Sec. II(B), *infra*.

[4] *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (Courts will pierce the corporate veil under the alter ego doctrine only in "exceptional cases").

[5] *See U.S. ex rel. Haight v. RRSA (Com. Div.), LLC*, No. 3:16-CV-1975-S, 2020 WL 6163139, at *6 (N.D. Tex. Oct. 20, 2020) (a company can act only through individuals—it "'cannot act or have a mental state by itself'") (citation omitted)).

knowingly submitted false claims to Medicare, as required by the FCA, and (2) acted with an intent

to disobey or disregard the law, as required by AKS, the Court must dismiss Count 1. *See, e.g.*,

*U.S. ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 605 (S.D. Tex. 2018), *aff'd*

*sub nom. U.S. ex rel. Patel v. Cath. Health Initiatives*, 792 F. App'x 296 (5th Cir. 2019) (dismissing

FCA claims due to insufficient allegations concerning scienter); *Hendrickson v. Bank of Am., N.A.*,

343 F. Supp. 3d 610, 636 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019) (dismissing

FCA claims where allegations did not support "an individualized finding of scienter").

### b.    Relator Fails to Allege an Illegal Scheme Under AKS.

To plead FCA liability predicated on an AKS violation, a relator must allege plausible and

particular details of a scheme to pay kickbacks in order to induce Medicare patient referrals. *See*

*U.S. v. Abundant Life Therapeutic Servs. Texas, LLC*, No. CV H-18-773, 2019 WL 1930274, at

*6 (S.D. Tex. Apr. 30, 2019) (citation omitted). Only "one purpose" of the payment must be to

induce the referrals, *i.e.*, to exercise influence over the reason or judgment of another in an effort

to cause the referral. *U.S. v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000) (citing *U.S. v. Davis*,

132 F.3d 1092, 1094 (5th Cir. 1998)); *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir.

1995) (citation omitted). "There is no AKS violation . . . where the defendant merely hopes or

expects referrals from benefits that were designed wholly for other purposes." *U.S. ex rel. Ruscher*

*v. Omnicare, Inc.*, 663 F. App'x 368, 374 (5th Cir. 2016) (citation omitted). Here, the Complaint

is entirely deficient. Carter asserts a myriad of conclusory allegations and deductions of fact in lieu

of plausible and particular details of a kickback scheme.

According to Carter, "ESS continually strives to boost inpatient hospital admissions and

does so, primarily, by illegally incentivizing physicians to refer and admit patients to inpatient

episodes of care" in "the ESS contracted hospital[s] where the physician[s] work[ .]" Compl. ¶¶ 3,

4. Carter asserts that under its Hybrid Program, ESS pays "illicit kickback payments tied directly

to the volume of patients" that Emergency physicians doubling as inpatient hospitalists refer and admit to inpatient care. *Id.* at ¶¶ 5 and 91. Carter also asserts that under its Hospitalist Program, ESS, through HCC, pays hospitalists "through illegal kickbacks based directly on the volume of patients" those physicians admit to inpatient care. *Id.* at ¶¶ 6 and 116. In making those assertions, Carter does no more than plead facts that are "merely consistent with" Defendants' purported liability, "stop[ping] short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 679 (citation omitted).

In order to deem Carter's AKS allegations well plead, and thus true, the Court would have to accept his assertion that "ESS has built its ***entire*** business on fraudulently generating inpatient admissions through bribes and kickbacks to physicians." Compl. ¶ 84 (emphasis added). Specifically, the Court would have to believe that 100% of the payments ESS pays to 100% of its physicians, *i.e.*, "over 1,000 independent contractor physicians," to admit patients, conduct rounds, and transfer and discharge patients at ESS' "roughly 50 client hospitals" are made by ESS for the ***sole and unequivocal*** purpose of inducing ***each and every*** one of those 1,000+ physicians, to refer and admit Medicare patients to inpatient care. *See id.* at ¶¶ 12, 84, 96, and 117. And, while he does not challenge the medical necessity of the services provided, *see generally id.,* Carter would have the Court believe that every one of the 1,000+ physicians abdicated his/her professional and ethical responsibilities by "completely" eschewing objective medical determinations when deciding to admit patients to inpatient services in favor of Defendants' "perverse incentives." *See id.* at ¶¶ 99, 118. Because these claims are more fanciful than conceivable, the Court should not "'strain to find inferences favorable'" to Carter, nor accept any of his conclusory allegations, unwarranted deductions, or legal conclusions. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citations omitted). Rules 8(a), 9(b), and 12(b)(6) demand more.

Strikingly, interspersed in the Complaint among Carter's oft-repeated conclusions regarding the illicit nature of ESS' business are statements allegedly made in ESS documents or by ESS officers, as well as descriptions of what is "normal" based on Carter's experience, that provide ***an alternative, legal explanation***. In particular:

- In the "normal" emergency to inpatient admission process, if the emergency physician so determines, she/he writes a referral for inpatient admission, and the hospitalist writes an admissions order when medically necessary, prepares a "History & Physical" report, conducts rounds, and performs "largely administrative" tasks to transfer or discharge the patient. *Id.* at ¶¶ 83-90. That is, the "normal" process is comparable to the one Carter attributes to Defendants' physicians. *Compare* ¶¶ 96, 98, 117 with ¶¶ 83, 85, 88-90.

- Hospitals, particularly rural hospitals, look to inpatient care referrals by the emergency as a primary revenue source. *Id.* at ¶¶ 83, 84. Notably, with his "extensive knowledge of this dynamic" based on "25 years of experience in rural hospital management," Carter does not contend that the "inclination of rural hospitals to leverage emergency department referrals for inpatient admissions" is unlawful. *See id.* at ¶ 84. Yet, describing "[t]he thrust of the entire ESS pitch and value proposition [as being on] increasing inpatient admissions and boosting revenue for client hospitals and ESS," Carter infers that ESS is in the business of kickbacks. *See id.* at ¶¶ 2, 3, 12, 91, 93 103, 119-122. As there is nothing inherently unlawful about leveraging emergency referrals for inpatient admissions—which is the norm in Carter's experience—it is likewise true that promotions by ESS of its "ability to increase inpatient admissions and therefore revenue for the hospital and ESS with the Hybrid Program," including the provision of "ROI assessments" that show how the "remov[al of] barriers to admitting these patients would also improve the quality of care for the community," *id.* at ¶¶ 93, 119, 121, do not inherently denote an illegal scheme. Nor does the "goal [of] increas[ing] inpatient admissions through the Hospitalist Program" and related ROI assessments "to demonstrate the Hospitalists Program's ability to create admissions and increase revenue," *id.* at 119, per se signal misconduct. *See id.* at ¶¶ 120-22 (insinuating specific ROI assessments were specious).

- ESS "promotes the Hybrid Program for 'lower volume' facilities," "boast[ing]" that it is intended to "appropriately train the ER physician to be utilized as an inpatient manager during the off-peak emergency hours," thereby "significantly reduc[ing] the financial burden on the hospital, while supporting an increase in inpatient census," "assist[ing] in the standardization of admission from the [emergency]," "ensur[ing] all appropriate admissions are captured," and "reduc[ing] frictions in the admission process and help[ing] ED physicians and hospitalists admit patients quickly." *Id.* at ¶¶ 91-93. According to Carter, these sentences intimate an illegal scheme or ruse. *See id.* at 31 (describing Defendants' "fraudulent scheme"). But, under their plain and ordinary meaning, these statements merely promote the advantages of the Hybrid Program.

- Carter claims that during discussions with ESS' CEO and COO regarding "the ESS compensation model," the CEO "commented" "that 'we can pay [physicians] for their work.'" *Id.* at ¶ 102 (alteration in original). Qualifying this statement as an "unfounded excuse[ for ESS'] compensation model," *id.*, Carter asserts that because "ESS readily confirms that the entire goal of its business is to increase profits through increased inpatient hospital admissions," "[i]t would be logically inarguable to claim that [the] per-admission incentive payments are not designed to increase admissions," and thus, ESS' "per-admission physician compensation is unequivocally intended to induce referrals . . . in violation of the AKS." *Id.* at ¶ 103. Once again, none of the statements Carter attributes to ESS (through "marketing materials" or "the statements of its corporate officers and employee") "inarguabl[y]" portend a fraudulent scheme or an AKS violation. *Cf. id.* Under their plain and ordinary meaning, these statements provide that ESS pays physicians for their work, and its business model is based on increasing profits for hospitals by providing hospitals with physician services.

Against this background, and speaking generously, the AKS scheme posited by Carter is "merely conceivable and not plausible" given that "the facts pleaded are consistent with both the claimed misconduct and a legal and 'obvious alternative explanation.'[ ]" *U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir.), *cert. denied*, 141 S. Ct. 905 (2020) (citing *Iqbal*, 556 U.S. at 682).

Despite Carter's insistence that the taint of kickbacks permeates Defendants' businesses, he fails to nudge his claims across the line from conceivable to plausible, and as such, the Court should dismiss Count 1 of the Complaint. *See Twombly*, 550 U.S. at 570; *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct'" (citation omitted)); *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) ("[F]actual allegations must be enough to raise a right to relief above the speculative level." (citations omitted)).

c.      **Relator Fails to Allege an Illegal Scheme Under the FCA.**

Much the same way, the Complaint fails to plead with particularity or plausibility the circumstances of Defendants' alleged fraud under Count 1. Because FCA liability attaches "not to

the underlying fraudulent activity," "but to the claim for payment," *U.S. ex rel. Longhi v. Lithium Power Tech. Inc.*, 575 F.3d 458, 467 (5th Cir. 2009), such claims must be pled with particularity under Rule 9(b). *See Colquitt*, 858 F.3d at 371. This requires that "at a minimum," Carter "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent"—*i.e.*, identify the "who, what, when, where, and how" of Defendants' presentment of a false claim. *See Williams*, 112 F.3d at 177; *Colquitt*, 858 F.3d at 371 (citation omitted). This he fails to do.

In lieu of any plausible or particularized details, Carter makes vast and sweeping assertions regarding Defendants' alleged fraud scheme. For instance, in the one, vague paragraph Carter devotes to the issue, he asserts that "ESS boasted" to him about the number of claims it processes, Compl. ¶ 127—an impressive feat given that a corporate entity "'cannot act or have a mental state by itself,'" *see Haight*, 2020 WL 6163139, at *6 (citation omitted). In correlation, Carter postulates that a "significant percentage of the 250,000 to 300,000" claims ESS submits each year for the services performed by its physicians are false. Compl. ¶ 127. No specific or concrete details regarding these alleged claims are included (*e.g.*, the specific acts at specific times that constitute fraud against the government, *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008)), much less of a scheme to submit false claims or reliable indicia that lead to a strong inference that false claims were actually submitted. *See Grubbs*, 565 F.3d at 190. Certainly, Carter does not provide particularity as to who, what, when, where, and how of the alleged fraud. Rather, as he does with Defendants' alleged kickback scheme, Carter broadly contends that "a significant percentage" of claims are tainted. This does not meet Rule 9(b)'s particularity requirements. *See, e.g.*, *Gregory v. Houston Indep. Sch. Dist.*, No. CV H-14-2768, 2016 WL 5661701, at *5 (S.D. Tex. Sept. 30, 2016) (finding complaint against corporate defendants deficient because "Relators

fail[ed] to provide even a representative example of an individual involved in the fraudulent scheme as part of a specific or representative example"); *U.S. ex rel. Wismer v. Branch Banking and Trust Co.*, No. 3:12-cv-1894, 2013 WL 5989312, at *5 (N.D. Tex. Nov. 12, 2013) ("[The Complaint] also fails to adequately allege **when** the false representations were made, vaguely asserting that false claims were submitted in '2010,' 'December 2010,' and 'numerous occasion subsequent' to these dates." (emphasis in original)).

The Complaint also fails with respect to the false claims ESS purportedly caused its client hospitals to submit in connection with the inpatient care referrals and admissions ESS physicians make. *See* Compl. ¶ 128. By way of example, Carter alleges that during a two-year period, records at the Memorial Hospital of Texas County ("MHTC") showed ESS physicians referred more patients for inpatient care than did community physicians with admitting privileges.[6] *Id.* at ¶¶ 131-33. Designating this as the "incontrovertible" impact of "Defendants' scheme to boost admissions through illegal per patient kickbacks," Carter claims that ESS caused MHTC to submit "hundreds of specific false claims." *Id.* at ¶¶ 129, 132. Except, once more, there is a legal and obvious alternative explanation. Logically, most of the patients seen by the community physicians required routine medical care, unlike the patients seeking care from the MHTC emergency department, who had a higher likelihood of presenting with conditions requiring inpatient care. Under this very likely scenario, it was logical and reasonable for the ESS physicians to admit more patients than the community physicians. This is not an apples to apples comparison. The admission rates are not a conclusive sign of the alleged misconduct—that ESS induced inpatient referrals through

---

[6] Notably, according to the American College of Emergency Physicians, data gathered on or about 2019 showed that emergency physicians managed about 411,000 patients daily. Of those, 74,000 were admitted into inpatient services, representing about 70% of the 106,000 patients admitted to hospitals each day. https://www.acepnow.com/article/latest-data-reveal-the-eds-role-as-hospital-admission-gatekeeper/.

kickbacks, causing MHTC to submit "hundreds" of false claims. Moreover, there is no escaping the fact that Carter fails to plead with particularity the who, what, when, where, and how of the alleged presentment of false claims by MHTC. *See generally id.*

Similarly, the Complaint is defective with respect to the alleged presentment of false claims by any of Defendants' client hospitals. Asserting a sweeping fraud scheme that impacts all client hospitals, Carter insinuates that Defendants' conduct impacts approximately 50 hospitals across 12 states. *See* Compl. ¶¶ 12, 84. But, yet again, Carter fails to allege any relevant facts regarding the who, what, when, where, and how. *See generally id.* To be sure, the Complaint is ***utterly void*** of any such particulars. Moreover, Carter provides no facts as to any alleged experiences he had at locations other than MHTC to support a plausible multi-state fraud scheme. *See generally id.*; *see also U.S. v. Team Fin., L.L.C.*, No. 2:16-CV-00432-JRG, 2019 WL 3943958, at *7 (E.D. Tex. Aug. 21, 2019) ("[R]elators provide no facts about their experiences at those locations to support a plausible claim of nationwide fraud.").

Like a house of cards, Carter's allegations under Count 1 are easily dismantled. For all the above-stated reasons, the Court should dismiss Count 1 of the Complaint.

>      2.     **Count 2 Must be Dismissed Because Relator Fails to Allege Facts Sufficient to State a Claim for an FCA Violation Predicated on Stark.**

Under Count 2, Carter asserts that Defendants violated Stark, and accordingly, are liable under the FCA because they submitted, and caused their client hospitals to submit, claims for payment by Medicare that were tainted by illegal referrals. As the Complaint shows, however, Carter fails to plead the alleged Stark and the FCA allegations with the requisite plausibility and particularity. The Court should therefore dismiss Count 2.

Where a relator predicates FCA liability on a Stark violation, the complaint must plead Stark and FCA violations. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 374 (4th

Cir. 2015) (citation omitted). As noted, a presentment claim requires plausible knowing and fraudulent course of conduct, materiality, and payment by the government. 31 U.S.C. § 3729(a)(1)(A). For its part, Stark prohibits a physician from making a referral for the furnishing of designated health services (DHS) to an entity with which the physician has a financial relationship. 42 U.S.C. § 1395nn(a)(1)(A); *see also* 42 U.S.C. § 1395nn(a)(2) (a financial relationship includes a compensation arrangement between the physician and the entity). If such a referral is made, Stark prohibits the entity from submitting a claim for the related DHS to Medicare for reimbursement. *Id.* at § 1395nn(a)(1)(B). As is relevant, a referral includes a "request by a physician for [an] item or service," and DHS encompasses inpatient hospital services. *Id.* at § 1395nn(h)(6). Significantly, a referral under Stark does not include "any [DHS] personally performed or provided by the referring physician." 42 C.F.R. § 411.351 (definition of "referral" for purposes of Stark). Here, since the DHS services at issue, the inpatient services, were personally performed or provided by the referring ESS physicians, there can be no Stark violation, nor any corollary FCA liability.

Carter asserts in the Complaint (1) that ESS "habitually" violates Stark because the "ESS contracted physicians have a financial relationship with ESS," and (2) ESS "causes its client hospitals to submit claims for DHS (inpatient services) that are furnished pursuant to prohibited referrals." Compl. ¶¶ 109-10. Based on his own statements, Carter's allegations are implausible. In describing the services ESS physicians cover as hospitalist, Carter asserts repeatedly that they "provid[e] care to patients who have been admitted to the hospital." *Id.* at ¶ 5; *see also id.* at ¶¶ 6 ("ESS supplies physicians to work exclusively as hospitalists-solely focused on admitting and caring for patients admitted to inpatient episodes of care."), 12 ("ESS . . . supplies physicians who work as hospitalists, providing patient care and coordinating care to patients admitted to hospital

episodes of care."), 89 ("After the patient is admitted to an inpatient episode, the hospitalist physician is the primary physician directing that patient's care. Once admitted, the hospitalist performs 'rounds' on patients. A 'round' typically involves the hospitalist physician visiting patients at their hospital bedside to communicate with patients and caregivers and monitor and coordinate the patients' care."). Put differently, the hospitalists personally perform or provide inpatient services, *i.e.*, the subject DHS, at Defendants' client hospitals. *See id.* at ¶¶ 109-10. Importantly, under Stark's definition of "referral," the referral and admission of patients to inpatient care by these hospitalists does not constitute a referral for purposes of Stark. *See* 42 C.F.R. § 411.351. As Defendants' "compensation model" does not implicate referrals under Stark, under Carter's theory of the case, they cannot be in violation of Stark or the FCA.

In an apparent effort to avoid this inherent deficiency in his allegations, Carter proclaims in one place in the Complaint that, "[a]s 'Hybrid Program' physicians, th[e] ESS physicians refer patients to inpatient episodes of care - whereby a different person, other than the initial referring physician, furnishes DHS[.]" Compl. ¶ 109. Tellingly, not only is the "different person" theory absent from the allegations about the Hospitalist Program, *see generally id.*, but also, the earlier noted language describing the services ESS physicians cover in the role of hospitalist contradicts Carter's "different person" theory. *See id.* at ¶¶ 5, 6, 12, 89. Simply put, Carter's feeble effort to yield the law as a sword while avoiding its consequences is suspect and must fail. The referrals at issue are not plausibly illegal referrals under Stark. *See U.S. ex rel. Beck v. St. Joseph Health Sys.*, No. 5:17-CV-052-C, 2021 WL 7084164, at *10 (N.D. Tex. Nov. 30, 2021) ("[Defendant] provides personally performed physician services, which, by definition, are not DHS.").

Further still, because the factual allegations supporting Carter's assertions of FCA liability under Count 2 are the same as those supporting Count 1, Count 2 likewise fails. *See* Sec. II(A)(1),

(3), *supra*. Carter fails to plead with plausibility and particularity fraudulent and knowing conduct as required under a presentment claim, or to differentiate between and among Defendants. *Id.* The Court should accordingly dismiss Count 2.

> **3.  Count 3 Must be Dismissed Because it Fails to Allege Facts Sufficient to State a Claim for Violation of the FCA Under 31 U.S.C. § 3729(a)(1)(B).**

Under Count 3, Carter asserts that Defendants are liable under 31 U.S.C. § 3729(a)(1)(B) because they "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." To state a "false records claim," a relator must plausibly plead (1) a false statement or record, (2) made or carried out with knowledge, (3) that was material (*i.e.*, influences the government's decision to pay a claim), and (4) caused the federal government to pay out money. *See U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (citation omitted). A false records claim depends on the presentment of a false claim for payment. *See U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476-77 (5th Cir. 2015), *aff'd sub nom. State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 39 (2016). Here, since Carter fails to allege sufficient facts to state a claim, Count 3 also fails.

First, Carter relies on the same "fraudulent schemes" and "false billing submissions" underlying his defective presentment claim under Count 1. *See* Compl. ¶ 147. Accordingly, Count 3 is defective for the reasons set forth in Count 1. *See* Secs. II(A)(1), (3), *supra*.

Additionally, Count 3 is predicated on mere supposition regarding the purported "creat[ion] or use[ ]" of false records or statements. *See* Compl. ¶ 147. Seeking to satisfy the pleading requirements, Carter asserts for the first time in the "Counts" section of the Complaint that Defendants created or used "false Medicare enrollment certifications, and false Medicare billing certifications." *Id.* But, once more, not only does Carter fail to differentiate between and

among Defendants, he also fails to include ***any*** particulars regarding the who, what, when, where, and how of the alleged fraudulent certifications. *See generally id.* (no reference to particular records or statements, precise submission dates, the identify of who submitted the records and statements and to whom, etc.). By the same token, Carter does not allege ***any*** particularized details regarding the materiality of these records or statements, merely asserting a formulaic recitation of the materiality element. *See* 31 U.S.C. § 3729(b)(4) ("the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property"); *cf. Universal Health Servs, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016) (materiality requirement is "rigorous" and "demanding"). There is no doubt that the nebulous nature of Carter's allegations are the antithesis of a plausible and particularized pleading. As such, the Court should dismiss Count 3 of the Complaint.

> **4.    Count 4 Must be Dismissed Because it Fails to Allege Facts Sufficient to State a Claim for Violation of the FCA Under 31 U.S.C. § 3729(a)(1)(G).**

Carter asserts under Count 4 that Defendants are liable on the basis of "reverse false claims." Liability under the FCA for a reverse false claim attaches when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Under a reverse false claim, "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). In the subject case, Carters asserts that "Defendants knew they received substantial amounts of money from the United States for professional fee billings submitted in violation of [Stark and AKS yet they] took no action to satisfy [their] obligations to

the United States to repay or refund those payments and instead retained the funds and continued to bill the United States[.]" Compl. ¶ 152. Count 4 is defective.

Given that Carter continues to rely on the same "fraudulent schemes" and false billing submissions underlying his defective presentment claims under Counts 1 and 2, *see id.*, Count 4 is likewise defective for the reasons set forth in Counts 1 and 2. *See* Secs. II(A)(1), (3) and II(B), *supra*. And, in turn, without a properly plead presentment claim, there cannot be an "obligation."

Moreover, Count 4 is redundant. Under Carter's theory, "whenever there is a violation of § 3729(a)(1)(A) for [the] receipt of payment of a false claim, there would also be a violation of § [3729(a)(1)(G)] for failing to return to the payment." *See U.S. ex rel. Besancon v. Uchicago Argonne, LLC*, No. 12-C-7309, 2014 WL 4783-56, at *4 (N.D. Ill. Sept. 24, 2014). "That, of course, would make § [3729(a)(1)(G)] redundant to § [3729(a)(1)(A)], which is not the intent of the statute." *Id.* For these reasons, the Court should dismiss Count 4. *See U.S. ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283, at *13 (W.D. Tex. Nov. 13, 2019) (dismissing redundant reverse false claim).

**5.      Count 5 Must be Dismissed Because it Fails to Allege Facts Sufficient to State a Claim for Violation of the FCA Under 31 U.S.C. § 3729(a)(1)(C).**

Under Count 5, Carter asserts Defendants conspired with their physicians and client hospitals to defraud the government. A claim under § 3729(a)(1)(C) must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement." *Grubbs*, 565 F.3d at 193 (citation and quotation marks omitted). As with other FCA claims, Rule 9(b)'s particularity requirements apply with "equal force," requiring particularity as to "the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy." *Id.* (citation omitted); *see also Haight*, 2020 WL 6163139, at *8 ("The Complaint must at least describe 'particular

circumstances' from which agreement may be 'naturally inferred.'" (citation and quotation marks omitted)). This includes a showing that defendants "shared a *specific intent* to defraud the Government." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008) (citation omitted) (emphasis added).[7] Here, these elements are entirely lacking.

As a threshold matter, Carter alleges that the Defendants, physicians, and hospitals "agreed to provide and accept illegal renumeration in exchange for prohibited referrals, and [to] submit claims tainted by such referrals[.]" Compl. ¶ 156. There can, however, be no liability for conspiracy under the FCA where there is no underlying FCA violation. *See Health Choice Grp., LLC v. Bayer Corp.*, No. 5:17-CV-126-RWS-CMC, 2018 WL 3637381, at *51 (E.D. Tex. June 29, 2018) (citation omitted). As set forth above, Carters fails to state a claim for a presentment violation predicated on AKS and Stark. Secs. II(A)(1), (3) and II(B), *supra*. Without a presentment violation, the conspiracy under Count 5 necessarily fails.

The defective nature of Count 5 extends to Carter's failure to allege with plausibility and particularity facts that support a conspiracy. There are no allegations in the Complaint of *specific intent*, or of a *specific agreement*, to defraud the government—*e.g.*, who made the agreement (other than the grouped "Defendants," a collective of 1,000+ "contracted physicians," and a collective of ~50 "client hospitals"), their roles, when it was made, or the agreement terms—much less of any overt actions in furtherance of this nebulous agreement. *See generally* Compl. Carter makes a broad claim against numerous entities and individuals[8] without identifying who

---

[7] *See U.S. v. Marlin Med. Sols. LLC*, No. SA-21-CV-00160-OLG, 2022 WL 190308, at *9, n.7 (W.D. Tex. Jan. 12, 2022) (explaining that conspiracy under the FCA requires the "heightened specific intent to defraud standard," noting the term "knowingly" is "noticeably absent from the conspiracy subparagraph" under § 3729(a)(1)(C) but is "explicitly present in all others that establish independent violations, *see* §§ 3729(a)(1)(A), (B), and (D)-(G)").

[8] It is telling that Carter does not name any of the physicians or hospitals as parties to this action.

specifically did and agreed to what, the specific times they did so, or their specific scienter. Thus, because Carter asserts no more than a conclusory allegation, he fails to state a claim for conspiracy under the FCA. As such, the Court should dismiss Count 5.

### B.      Counts 6-15 Fail for Multiple Reasons.

#### 1.      Relator Lacks Standing Under Counts 7 and 13.

Carter asserts in Counts 7 and 13 violations under the Arkansas State Medicaid Fraud False Claims Act ("ASMFFCA") and New Mexico Medicaid False Claims Act ("NMMFCA"), respectively, for which he lacks standing to enforce. First, the ASMFFCA does not permit *qui tam* actions. ARK. CODE ANN. §§ 20-77-901 – 911. The statutory language provides in relevant part that a person shall be liable ***only*** "through the Attorney General" for claims under the ASMFFCA. *Id.* at § 20-77-902. Thus, because Carter lacks standing to pursue a *qui tam* action for a violation of the ASMFFCA, Count 7 must be dismissed.

Similarly, not only does the NMMFCA limits *qui tam* actions only to "affected persons," but also, when the state of New Mexico declines to intervene, a relator can proceed only if the state finds there is "substantial evidence of a violation." N.M. Stat. Ann. §§ 27-14-7(B), (E)(2). Here, Carter provides no basis whatsoever to satisfy ***either*** requirement. New Mexico declined to intervene, and it did not find "substantial evidence of a violation" in connection with Count 13. ECF No. 24; *see also* Compl. ¶¶ 194-98. Therefore, Count 13 should be dismissed.

#### 2.      Relator Fails to State a Claim Under Counts 6-9 and 11-15.

In Counts 6-9 and 11-15, Carter assert violations under the: (1) Texas Medicaid Fraud Prevention Act ("TMFPA"); (2) ASMFFCA; (3) Colorado Medicaid False Claims Act ("CMFCA"); (4) Illinois False Claims Act ("IFCA"); (5) Indiana Medicaid False Claims and Whistleblower Protection Act; (6) Louisiana Medical Assistance Programs Integrity Law ("LMAPIL"); (7) NMMFCA; (8) Oklahoma False Claims Act ("OFCA"); and (9) Tennessee

Medicaid False Claims Act ("TMFCA") (collectively, the "State Claims"). Utilizing the same theories of fraud underlying the presentment claim allegations in Counts 1 and 2, the State Claims allege that Defendants violated the false claims statutes of the nine previously noted states. But, "[a]bsent allegations about how a state law differs from the FCA – which Relator has not pled here – courts interpret state false claims laws consistently with the FCA." *Health Choice Alliance, LLC, on behalf of U.S. v. Eli Lilly & Co., Inc.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *58 (E.D. Tex. July 25, 2018) (citation omitted). On this basis, the State Claims should be dismissed for the same reasons set forth in Counts 1 and 2. *See* Secs. II(A)-(B), *supra*.

Further, the State Claims fail because they do not comply with Rule 9(b). "Like federal FCA claims, state law FCA claims are also subject to Rule 9(b)." *Health Choice*, 2018 WL 4026986, at *58; *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010) ("State law fraud claims are subject to the heightened pleading requirements of Rule 9(b).[ ]"). In order "[t]o meet this heightened pleading standard, Relator must allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings." *Health Choice*, 2018 WL 4026986, at *59; *see also Musket Corp.*, 759 F. App'x at 289 ("The who, what, when, where, and how of the alleged fraudulent scheme must be pleaded in the complaint."). But, there is no such specificity here. It is utterly lacking.

As with the FCA allegations, Carter fails to plead that Defendants acted with the requisite scienter under the State Claims. Like the FCA, the State Claims require that a party act "knowingly." Ark. Code Ann. § 20-77-902; Colo. Rev. Stat. Ann. § 25.5-4-305; 740 Ill. Comp. Stat. Ann. 175/3; Ind. Code § 5-11-5.7-2; La. Stat. Ann. § 46:438.3; N.M. Stat. Ann. § 27-14-4; Okla. Stat. Ann. Tit. 63 § 5053.1(B); Tenn. Code. Ann. § 71-5-182; Tex. Hum. Res. Code Ann. § 36.002. But, the Complaint is devoid of any factual allegations relating to Defendants' state of

mind. Instead, Carter pleads nearly identical recitations for all nine State Claims: "Defendants' knowingly—by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information—presented or cause to be presented false or fraudulent claims to the State . . . for payment or approval." Compl. ¶¶ 160, 165, 170, 175, 185, 190, 195, 200, 205. The only language Carter alters between the nine State Claims is the name of the relevant statute and the state name. *Id.* Aside from these trivial revisions, each allegation amounts to nothing more than a formulaic copy and paste job. It is well established that simply restating the elements of a claim is insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). Thus, the lack of any plausible or particular allegations regarding Defendants' scienter under the State Claims is fatal.

Moreover, Carter fails to allege with requisite plausibility and particularity a fraudulent scheme that was material under the State Claims. Specifically, Carter asserts violations of the nine State Claims without identifying specific actions or knowledge to support such allegations. *See generally* Compl. In the 60 pages and 238 paragraphs comprising the Complaint, Carter raises (defective) factual allegations relating to ***one*** of the nine states at issue: Oklahoma. *Id.* at ¶¶ 129-35; *see* Sec. II(A)(3) at 13-14, *supra* (dismantling Carter's unwarranted deductions in connection with MHTC). That aside, the Compliant includes no more than a formulaic recitation of the elements for each of the State Claims. Compl. ¶¶ 158-208. Carter does not detail a fraudulent scheme or identify a single, specific fraud violation. Nor does he describe the materiality of the purported fraud, *i.e.*, its tendency or capability to influence payment by the State decisionmaker. *See Escobar*, 579 U.S. at 193. Rather, the Complaint includes vague recitals regarding the states "pa[ying] for claims that otherwise would not have been allowed." Compl. ¶¶ 162, 167, 172, 177,

182, 187, 192, 197, 202, 207. This is clearly insufficient for purposes of plausibility and particularity. There is nothing alleged for the Court to infer misconduct in connection with the State Claims, nor anything about the related "who, what, when, where, and how." *Colquitt*, 858 F.3d at 371 (citation omitted); *see also Health Choice*, 2018 WL 4026986, at \*59 ("[R]elator must allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings."). The Court should therefore dismiss Counts 6-9 and 11-15.[9]

### 3.    Relator Fails to State a Claim Under Count 10.

Under Count 10, Carter asserts a violation of the Illinois Insurance Claims Fraud Prevention Act ("IICFPA").[10] In doing so, he continues to rely on the same theories underlying the FCA presentment claims in Counts 1 and 2. Count 10 is thus defective for the reasons set forth in Counts 1 and 2. *See* Secs. II(A)-(B), *supra*; *see also City of Chi. v. Purdue Pharm. L.P.*, 211 F. Supp. 3d 1058, 1083 (N.D. Ill. 2016) (citing *U.S. ex rel. Sibley v. A Plus Physicians Billing Serv. Inc.*, No. 13 C 7733, 2015 WL 8780548, at \*3 (N.D. Ill. Dec. 15, 2015) ("Because viable claims under these [insurance fraud] statutes require essentially the same allegations as a viable federal FCA claim, which plaintiff has not stated, these claims fail as well.").

Carter also fails to plead a violation of the IICFPA with plausibility or particularity. He does not identify a single insurance entity, a transaction date, or a relevant party in the state of Illinois. Carter also fails to allege materiality. The Court should therefore dismiss Count 10.

---

[9] Under the LMAPIL, the statutory language provides that "[n]o action shall be brought under this Section unless the amount of alleged actual damages is one thousand dollars or more." *See* La. Stat. Ann. § 46:438.3(G). Yet, Carter neglects to provide any information relating to the alleged submission of any claims in Louisiana, including the value of such claims. Accordingly, Count 12 should be dismissed on this basis.

[10] Carter cites to 720 Ill. Comp. Stat. § 5/46-1, which is listed as a potential source of liability under the IICFPA. However, 720 Ill. Comp. Stat. § 5/46-1 was repealed as of July 1, 2011. Notwithstanding, the Complaint appears to rely upon the applicable statutory language of 740 Ill. Comp. Stat. § 92-5(b).

### C.   The Court Should Dismiss the Complaint with Prejudice.

Carter should not be given an opportunity to amend the Complaint. No matter that it consists of a total 208 paragraphs and 60 pages, as described above, the Complaint is utterly lacking in plausibility and particularity. Indeed, it is a textbook example of a defective pleading, comprised of an assortment of unwarranted dedications that serve as the basis for Carter's legal and factual conclusions. Whatever information Carter knew and had to use, he did, assembling a kitchen-sink collection of allegations in the style of see-what-sticks-at-the-wall. If Carter could plead his claims with plausibility and particularity, he would have. All things considered, Carter cannot establish any of the purported schemes he has contrived, and he will remain unable to do so if permitted to amend the flaw-packed Complaint. Allowing Carter such a chance would be futile, contrary to judicial economy, and prejudicial to the Defendants. As the Fifth Circuit has explained, "[i]n deciding whether to grant leave to amend, the [Court] may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) ("Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." (citation omitted)). Therefore, in keeping with its discretion, the Court should dismiss Counts 1-15 with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant this Motion and dismiss the Complaint in its entirety, with prejudice and without leave to amend. Defendants further request that the Court grant all other relief it deems just and proper.

June 28, 2022

Respectfully submitted,

By: */s/ Jeffrey J. Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
Arianna G. Goodman
Texas Bar No. 24109938
**Vedder | Price**
100 Crescent Court, Suite 350
Dallas, Texas 75201
469.895.4800

Tamara Droubi (admitted *pro hac vice*)
District of Columbia Bar No. 1025088
**Vedder | Price**
1401 New York Avenue, Suite 500
Washington, DC 20005
202.312.3368

Jason B. Sobelman (admitted *pro hac vice*)
Illinois Bar No. 6339705
**Vedder | Price**
222 North LaSalle Street
Chicago, Illinois 60601
312.609.7585

**COUNSEL FOR DEFENDANTS EMERGENCY STAFFING SOLUTIONS, INC. AND HOSPITAL CARE CONSULTANTS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically to all counsel of record on the 28th day of June 2022, via the Court's CM/ECF system.

*/s/ Jeffrey J. Ansley*
Jeffrey J. Ansley