IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the States of ARKANSAS, COLORADO, ILLINOIS, INDIANA, LOUISIANA, NEW MEXICO, OKLAHOMA, TENNESSEE and TEXAS, *ex rel.* MICHAEL CARTER,<br><br>        Plaintiffs,<br><br>  v.<br><br>EMERGENCY STAFFING SOLUTIONS, INC.; HOSPITAL CARE CONSULTANTS, INC.,<br><br>        Defendants. | Civil Action No. 3-19CV-1238M |

**STATE OF TEXAS'S STATEMENT OF INTEREST
IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

The State of Texas ("Texas") files this Statement of Interest to correct misstatements made in Defendants Emergency Staffing Solutions, Inc. and Hospital Care Consultants, Inc.'s (collectively, "Defendants") Motion to Dismiss Complaint and Supporting Brief (Dkt. No. 44) regarding the proper legal interpretation of the Texas Medicaid Fraud Prevention Act, Chapter 36 of the Texas Human Resources Code ("TMFPA"). Texas retains an interest in this matter, even though it has declined to intervene, because Texas is entitled to a portion of any proceeds of the TMFPA cause of action and because Texas has an ongoing interest in ensuring the consistent and correct interpretation of the TMFPA.[1]

---

[1] Texas's declination in this matter is not a comment on the merits of the case. *See* TEX. HUM. RES. CODE § 36.104 (State's declination is merely notice of the State's decision not to intervene). The TMFPA contemplates cases continuing in the event of Texas's non-intervention by conferring rights on

As discussed in detail below, and contrary to Defendants' assertion that Relator's theories under the Texas statute fail "for the same reasons" as its federal False Claims Act ("FCA") claims, liability under the TMFPA differs significantly from liability under the FCA, and the TMFPA claims under Count Six must be evaluated under Texas law. *See* Dkt. No. 44 at 29-30. An analysis of the plain language of the TMFPA violations asserted in this case, TEX. HUM. RES. CODE §§ 36.002(1) and (2), shows that Defendants fail to address the correct evidentiary elements required by these Texas law claims. *See In re Xerox Corp.*, 555 S.W.3d 518, 535 (Tex. 2018) (conducting an analysis of the TMFPA's plain and ordinary language to interpret the statute). Defendants summarily conclude that *all* state law claims mirror the FCA, but Defendants misunderstand the consequential policy goals reflected in the text of the TMFPA. *See In re Xerox Corp.*, 555 S.W.3d at 525. ("In addition to substantial monetary consequences for fraud on the system, the TMFPA authorizes onerous administrative sanctions, including mandatory suspension or revocation of a license, permit, certification, or state-provider agreement and exclusion from the Medicaid program for at least ten years.").

Texas respectfully submits the following:

I. **The TMFPA differs substantially from the FCA. The plain language of the TMFPA controls interpretation of the Texas state law claims.**

Although some parts of the statutes are similar, the TMFPA does not mirror the FCA, and the TMFPA substantially differs from the FCA in the parts relevant to this case. The majority of TMFPA causes of action do not require presentment of a "false claim" to incur liability. Rather, the TMFPA sets out thirteen "unlawful acts" that each proscribes specific conduct involving the

---

relators and permitting relators to pursue TMFPA allegations after Texas declines to intervene. *See, e.g.*, Tex. Hum. Res. Code §§ 36.104, 36.110(a-1).

Texas Medicaid program. TEX. HUM. RES. CODE § 36.002(1)-(13). The elements required to establish liability under the TMFPA and the FCA are different depending on the unlawful acts alleged. In matters involving state law, federal courts apply the same law that would be applied by the highest court of that state. *Howe ex rel. Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 627 (5th Cir. 2000) (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In interpreting the TMFPA, the Texas Supreme Court stated, "[s]tatutory language is the 'surest guide to the Legislature's intent' because 'it is a fair assumption that the Legislature tries to say what it means.'" *In re Xerox Corp.*, 555 S.W.3d at 527 (citing *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012)). The Texas Supreme Court continued, "the Legislature selected statutory words, phrases, and expressions deliberately and purposefully and was just as careful in selecting the words, phrases, and expressions that were included or omitted." *Id.*; *see also City of Rockwall v. Hughes*, 246 S.W.3d 621, 629 (Tex. 2008) (upholding the plain language of a statute).

The Texas Supreme Court expressly rejected the contention that the FCA and TMFPA should be read as identical, holding, "[t]hough the parties make comparisons to analogous federal and state fraud-prevention acts as it suits their arguments—including the federal False Claims Act…and similar false-claims or Medicaid-fraud statutes enacted by thirty-two state and local jurisdictions—these comparisons are not probative." *In re Xerox Corp.*, 555 S.W.3d at 535. "These statutes, while similar in aim and tactic, employ materially different language, and the language of our statutes controls the outcome here." *Id.* Consequently, the cause of action asserted under the TMFPA in this case must be analyzed "according to [the TMFPA's] plain and ordinary language," especially where that language differs from the FCA. *Id.*

Federal courts in Texas also have declined to interpret the TMFPA as identical to the FCA. The federal district court in *United States ex rel. Govindarajan v. Dental Health Programs, Inc.*, recognized that the scope of the TMFPA "reach[es] a broader range of false or fraudulent conduct less closely tied to the Medicaid claim submission process." *United States ex rel. Govindarajan v. Dental Health Programs, Inc.*, No. 3:18-cv-00463-E, 2020 WL 3064712, at *7 (N.D. Tex. June 8, 2020) (citing *United States ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp.3d 584, 606-07 (S.D. Tex. 2018), *aff'd sub nom. United States ex rel. Patel v. Catholic Health Initiatives*, 792 F. App'x 296 (5th Cir. 2019)) (brackets in original). Citing *Xerox*, the *Govindarajan* court noted that despite some similarities with the FCA, "the TMFPA's plain language controls with respect to claims brought under [the TMFPA]" and analyzed the TMFPA unlawful acts alleged separately from the FCA claims. *Govindarajan*, 2020 WL 3064712, at *7-*14.

Here, Defendants incorrectly apply their FCA-based arguments to Relator's TMFPA claims. *See* Dkt. No. 44 at 22 (wrongly asserting that all state claims, including the Texas cause of action, fail for the same reasons as the FCA claims). In doing so, Defendants fail to recognize that the TMFPA's plain language differs substantially from the FCA specifically concerning the unlawful acts asserted in this case.

Defendants rely on the unreported decision *Health Choice Alliance, LLC, on behalf of U.S. v. Eli Lilly & Co. Inc. et al.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *58 (E.D. Tex. July 25, 2018), to support their position that all state claims should be analyzed consistently with the FCA, but the case is not on point. The *Health Choice Alliance* court merely found that no fraud on a nationwide level had been sufficiently plead; it did not conduct an

analysis of any specific state-law claims, including the TMFPA. *Health Choice Alliance LLC*, 2018 WL 4026986 at *60.

Unlike the FCA, the TMFPA unlawful acts pled here: (1) do not require the presentment of a "false claim" to impose liability, and (2) do not require proof that the unlawful act was material to payment to impose liability. Defendants lack a legal basis to assert that liability is analogous. State and federal courts have held that TMFPA liability is distinct and requires its own analysis.

## II.  TMFPA Sections 36.002(1) and (2) do not require Relator to plead the submission of false claims to establish liability.

The plain language of the majority of TMFPA unlawful acts, including the unlawful acts pled here, do not require submission or presentment of a "false claim" to establish liability. *See, e.g.*, TEX. HUM. RES. CODE §§ 36.002(1)-(5), (9)-(13). In addressing the FCA claims, Defendants contend throughout their motion that the Complaint fails to plead the submission of "false claims." *See generally* Dkt. 44 at Sec III(A) & (B). Defendants then erroneously attempt to add the element of submission or presentment of a "false claim" to the TMFPA by summarily arguing that the state law claims, including the Texas cause of action, must fail for the same reasons as the FCA claims. *See* Dkt. No. 44 at 29-30. But that argument improperly ignores the plain language of TMFPA §§ 36.002(1) and (2). Per the TMFPA, "A person commits an unlawful act if the person:

> "[K]nowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized." Tex. Hum. Res. Code § 36.002(1); or,

5

"[K]nowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized." Tex. Hum. Res. Code § 36.002(2);

Whether a TMFPA unlawful act is committed is based on the conduct defined by the statute, and the language of the statute governs what must be proven. *In re Xerox Corp.*, 555 S.W.3d at 535. The plain language of the TMFPA unlawful acts alleged here do not require submission of a "false claim" to establish liability. *See, e.g.*, *Govindarajan*, 2020 WL 3064712 at *7 (holding that TEX. HUM. RES. CODE § 36.002(2) "does not expressly require payment of a claim.").

### III. Proof that an unlawful act was material to payment is not required to prove a TMFPA violation.

By its plain language, the TMFPA does not require Relator to prove that the TMFPA violations are material *to Texas's payment decisions*. The TMFPA defines "material" as "having a natural tendency to influence or to be capable of influencing." TEX. HUM. RES. CODE § 36.001(5-a). The FCA, in contrast, expressly limits this definition to "*the payment or receipt of money or property.*" 31 U.S.C. § 3729(b)(4) (italics added).

Importantly, the unlawful act defined by TEX. HUM. RES. CODE § 36.002(2) makes no reference to the terms "material," "materiality," or any other term that might require materiality as an element of the TMFPA claim. The statutory definition does not apply to this unlawful act.

Likewise, the unlawful act under TEX. HUM. RES. CODE § 36.002(1) is not limited to conduct influencing government *payment*. This unlawful act refers to "a false statement or misrepresentation of a **material fact** to permit a person to receive a benefit or payment," but the

6

FCA refers to "a . . . statement **material to** a false or fraudulent **claim**" (bold added). The TMFPA applies to situations other than "the payment or receipt of money or property" and to situations beyond receipt of payments or benefits to include the influence of government decisions that set the conditions for ("to permit") those payments and benefits. *See* TEX. HUM. RES. CODE § 36.002(1) ("knowingly makes or causes to be made a false statement or misrepresentation of a **material** fact to permit a person to receive a *benefit* or payment under the Medicaid program that is not authorized or that is greater than the *benefit* or payment that is authorized.") (emphasis added). By its plain and ordinary language, the TMFPA's definition of "material" is, unlike the "material" definition in the FCA, expressly not limited to a government payment decision.

      Defendants argue Relator's failure to "describe the materiality of the purported fraud, *i.e.,* its tendency or capability to influence payment by the State decisionmaker" supports dismissal of the state claims. Dkt. No. 44 at 31 (citing *Universal Health Servs. Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193 (2016)) ["*Escobar*"]. But adding the FCA definition and its application only to "the payment or receipt of money or property" to the term "material" in the TMFPA is improper. *Lippincott v. Whisenhunt*, 462 S.W.3d at 508; *Patel v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 607 (S.D. Tex. 2018), *aff'd sub nom*. *United States ex rel. Patel v. Cath. Health Initiatives*, 792 F. App'x 296 (5th Cir. 2019) (commenting that the court is inclined to accept Texas's position "that the 'false certification' doctrines developed by federal courts under the FCA are inapplicable to the TMFPA, as is the materiality requirement that the Supreme Court expounded in *Escobar"*).

7

*Escobar*'s analysis of FCA "materiality" as applied in an implied false certification FCA case is inherently more restrictive than the Texas Legislature's definition of "material" in the TMFPA. *See TGSNOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."); *see also Prairie View A&M Univ. v. Chatha*, 381 S.W.3d at 507 (holding textual distinctions between parallel state and federal statutes cannot be ignored); *State v. Lowry*, 802 S.W.2d 669, 672 (Tex. 1991) (orig. proceeding) (recognizing that textual variances between state statute and similar federal statute cannot be ignored). The *Escobar* Court was primarily concerned with the possibility that federal false claims suits premised on theories of implied false certification could unreasonably expand the scope of the FCA. *Escobar*, 579 U.S. at 194 ("The False Claims Act is not 'an all-purpose antifraud statute, *Allison Engine,* 553 U.S., at 672, 128 S.Ct. 2123 or a vehicle for punishing garden-variety breaches of contract or regulatory violations.'")  The Supreme Court is wary of the FCA becoming a general enforcement device for any regulatory violation. *Escobar,* 579 U.S at 196 ("We emphasize, however, that the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations.").

Unlike the FCA, the TMFPA is narrowly constructed to apply only to certain unlawful acts affecting the Medicaid program. The limited scope of the TMFPA does not present the same risk of overbroad application as concerned the *Escobar* Court in its analysis of the FCA. The Texas Supreme Court explicitly rejected the application of *Escobar*'s reasoning to the TMFPA in *Nazari v. State*, 561 S.W.3d 495, 507 (Tex. 2018) and *In re Xerox*. The *Nazari* Court held: "[T]he Providers contend, essentially, that they should not be liable for their fraud because

8

the state let them get away with it. This argument has nothing to do with whether the Providers violated the Act." *Id*. The *Nazari* Court compared the Providers' argument to a speeder's "selective enforcement" counterclaim, and to a speeder's argument that a speeder "thought his conduct was permissible because it went unpunished for several years." *Id*. at 508. In rejecting the Providers' argument, the *Nazari* Court held: "Of course, such arguments would not be relevant to whether the offensive conduct actually occurred." *Id*. at 508. The *Nazari* Court also held that *In re Xerox* "conclusively rebuts the Providers' argument." *Id*. at 509 (citing *In re Xerox*, 555 S.W.3d at 521–22). Because the TMFPA and the FCA differ in significant, relevant ways with respect to both their purpose and their specific text, Defendants' reliance on the FCA and *Escobar* is unavailing to an analysis of the Texas cause of action.

## CONCLUSION

For the reasons set forth above, a review of Relator's TMFPA claims should be made solely in consideration of the requirements of the plain language of the TMFPA. Defendants' FCA-based presentment and materiality arguments do not apply to Relator's TMFPA claims.[2]

    Respectfully Submitted,

    KEN PAXTON
    Attorney General of Texas

    BRENT WEBSTER

---

[2] Defendants also argue Relator failed to properly plead scienter for the State claims. Defendants do not argue that the Federal Anti-Kickback Statute's "willful" standard applies to any state claims; but neither the TMFPA nor the Texas Anti-Kickback Statute requires the element of willfulness. *See* Tex. Hum. Res. Code § 36.0011(a) (TMFPA), Tex. Hum. Res. Code § 32.039(b) (Texas Anti-Kickback Statute).

9

First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

RAYMOND C. WINTER
Chief, Civil Medicaid Fraud Division


/s/ *Craig M. Jacobs*
CRAIG M. JACOBS
State Bar No. 24078726
BRENT COCKERHAM
State Bar No. 24090037
LYNNE KURTZ-CITRIN
State Bar No.  24081425
RICHARD A. HUNTPALMER
State Bar No. 24097857
Assistant Attorneys General
Office of the Attorney General
Civil Medicaid Fraud Division

P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 936-2769
Fax:    (512) 936-0674
Craig.Jacobs@oag.texas.gov
Brent.Cockerham@oag.texas.gov
Lynne.Kurtz-Citrin@oag.texas.gov
Richard.Huntpalmer@oag.texas.gov

ATTORNEYS FOR THE STATE OF TEXAS

## **CERTIFICATE OF SERVICE**

I certify on August 2, 2022, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

>           */s/ Craig M. Jacobs*
>           CRAIG M. JACOBS